IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**ZALDY N. SABINO**,

        Petitioner,

v.

**CIVIL ACTION NO. 5:23-CV-229**
Judge Bailey

**MELISSA BAYLISS**,
Warden,

        Respondent.

## ORDER GRANTING MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pending before this Court is respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Doc. 8] and accompanying Memorandum in Support [Doc. 9], filed July 13, 2023. On July 14, 2023, United States Magistrate Judge James P. Mazzone issued a **Roseboro** Order [Doc. 10] to petitioner, which informed him of his obligation to file responsive briefing to the pending Motion. On August 2, 2023, petitioner filed a Response in Opposition [Doc. 12] to the Motion. Respondent filed an ordered Reply [Doc. 14] on August 9, 2023. Accordingly, this matter is ripe for adjudication. For the reasons contained herein, the Motion will be granted.

## BACKGROUND

Petitioner is an inmate currently designated by BOP to FCI Morgantown. [Doc. 1]. Petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241 on June 16, 2023, alleging BOP is improperly denying him Earned Time Credits ("FTC") under the First Step Act ("FSA"). [Id.]. Additionally, petitioner argues he should be placed in home

confinement pursuant to the CARES Act. [Id.]. The petition must be dismissed because petitioner has failed to exhaust administrative remedies, the CARES Act has expired, and BOP has correctly calculated petitioner's FTC.

**I.    The First Step Act**

The First Step Act of 2018, signed into law on December 21, 2018, includes a provision for evidence-based recidivism reduction ("EBRR") program incentives activities rewards. See Pub. L. 115-391; 18 U.S.C. § 3632(d). Under this program, prisoners may earn various incentives and rewards for their successful participation in and completion of certain programs and productive activities that are assigned to them by BOP staff. 18 U.S.C. § 3632(b) and (d). One such incentive is the award of time credits.

Codified at 18 U.S.C. § 3632(d)(4), time credits are explained as follows:

(4) Time credits. -

(A) In general. - A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(B) Availability. - A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed -

(i) prior to the date of enactment of this subchapter; or

(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

(C) Application of time credits toward prerelease custody or supervised release. - Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4).

BOP has issued regulations implementing the FSA, and these regulations, as expressed in 28 C.F.R. §§ 523 & 541, were subject to the notice and comment provisions of the APA. *See* 28 C.F.R. § 523.40–44; *see also* 87 Fed. Reg. 2705-2718. During the comment period, the Attorney General's Office received approximately 200 comments and statements and held two listening sessions. *See* 87 Fed. Reg. 2708. The Attorney Gneral then met with the Independent Review Committee created by Section 107 of the FSA to discuss proposed changes, as required by 18 U.S.C. § 3632, and announced enhancements in a document entitled the First Step Act of 2018: Risk and Needs Assessment System–UPDATE (January 2020) (2020 Update). *See* The First Step Act of 2018: Risk and Needs Assessment System - Update (January 2020), available at

https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updates.pdf (last visited December 8, 2022).

On January 19, 2022, BOP published its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018." These federal regulations further defined "successful participation" in EBRR and productive activities:

(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or productive activities that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or productive activity.

. . .

(4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or productive activities in situations including, but not limited to:

(i) Placement in a Special Housing Unit;

(ii) Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

(iii) Temporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.);

(iv) Placement in mental health/psychiatric holds; or

(v) "Opting out" (choosing not to participate in the EBRR programs or productive activities that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

28 C.F.R. § 523.41.

Pursuant to Program Statement 5410.01, First Step Act of 2018 - Time Credits: Procedure for Implementation of 18 U.S.C. § 3632(d)(4), "In the case of placement or transfers outside the institution (e.g. furlough, writ, escorted trip, outside hospital placement, etc.), an inmate will continue to earn FTCs if they are in the institution for any part of the day."

## II. CARES Act

In response to the COVID-19 pandemic, Congress passed the CARES Act. *See* Pub. L. No. 116-136. Under the CARES Act, "Congress [among other objectives] sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] § 3624(c)(2)." ***Furando v. Ortiz***, 2020 WL 1922357, at *2 (D. N.J. Apr. 21, 2020) (citing Pub. L. No. 116-136, § 1200(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." ***Id.***

Section 12003(b)(2) of the CARES Act provided that:

During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which

> the Director is authorized to place a prisoner in home confinement under the first sentence of a section 3624 (c)(2) of title 18, United States Code, as the Director determines appropriate.

Pub. L. No. 116-136, § 12003(b)(2).

Section 12003 (a)(2) defined the "covered emergency period" as "beginning on the date which the President declared a national emergency under the National Emergencies Act (50 U.S.C. 1601 et seq.)" with respect to COVID-19, and ending "on the date that is 30 days after the date on which the national emergency declaration terminates."

On April 10, 2023, the President signed into law House Joint Resolution 7, which terminated the national emergency related to the COVID-19 pandemic. *See* H.J. Res. 7 - Relating to a national emergency declared by the President on March 13, 2020, available at https://www.congress.gov/bill/118th-congress/house-joint-resolution/7 (last visited June 26, 2022). Accordingly, the CARES Act, including the provisions expanding the discretion of BOP to extend the length of time inmates could be placed in home confinement, expired on May 10, 2023. Id.

## **LEGAL STANDARDS**

"A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the motion either way." **Newsome v. Williams**, 2016 WL 11431790, at *2 (N.D. W.Va. May 26, 2016) (Trumble, MJ), *report and recommendation adopted in* **Newsome v. Williams**, 2016 WL 4153615 (N.D. W.Va. Aug. 5, 2016) (Groh, CJ) (quoting **Laughlin v. Metro. Washington Airports Auth.**, 149 F.3d 253, 260 (4th Cir. 1998)).

A motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint or pleading. **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007). In assessing a motion to dismiss, a court may consider public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." **Katyle v. Penn National Gaming, Inc.**, 637 F.3d 462 (4th Cir. 2011). This includes documents filed in prior court proceedings. See **Walker v. Kelly**, 589 F.3d 127 (4th Cir. 2009).

Federal Rule of Civil Procedure 12 states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." **Newsome v. Williams**, 2016 WL 11431790, supra, (quoting Fed. R. Civ. P. 12(d)). The Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Id.* (quoting **Sec'y of State for Defence v. Trimble Navigation Ltd.**, 484 F.3d 700, 705 (4th Cir. 2007) (citing **Blankenship v. Manchin**, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Rule 56(e) of the Federal Rules of Civil Procedure provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule– set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Rule 56 further provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323–25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

A *pro se* party's pleadings are generally construed more liberally and held to a less stringent standard than pleadings drafted by an attorney. See **Hughes v. Rowe**, 449 U.S.

5, 9 (1980). However, even under that deferential standard, this Court can "pierce the veil of a complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

## DISCUSSION

As articulated by respondent, petitioner is not entitled to relief for several reasons.

**I.    Petitioner failed to exhaust administrative remedies in relation to his claims under the CARES Act.**

Petitioner must first exhaust administrative remedies regarding his claims before a habeas action should be entertained. See *McClung v. Shearin*, 90 F.App'x 444 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *United States v. Odiana*, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing § 2241); *United States v. Mercado*, 37 F.App'x 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing § 2241).

While the requirement of exhaustion in § 2241 petitions is judicially imposed and courts retain discretion to waive the requirement when exhaustion is futile, unless the agency is certain to rule adversely, failure to exhaust is not excused. See *Woltz v. Ziegler*, 2012 WL 1599916, at *3 (S.D. W.Va. Mar. 23, 2012) (Van Dervort, M.J.), *report and recommendation adopted*, 2012 WL 1599894 (S.D. W.Va. May 7, 2012) (Berger, J.) (internal citations omitted).

BOP has established a three-tiered administrative remedy process "through which an inmate may seek formal review of any issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10, *et seq.*

9

Pursuant to this process, petitioner was required to first file an administrative remedy at the institutional level, then file an appeal to the Regional Director, then file an appeal to the Central Office. Id. Upon receipt of a final decision from Central Office, petitioner's administrative remedies would have been considered exhausted. Id.

Petitioner filed ten administrative remedies while incarcerated with BOP. [Doc. 9-1]. A review of petitioner's administrative remedy history reveals that petitioner filed or attempted to file four administrative remedies relating to the FSA, including exhausting his claim through the Central Office level via remedy number 1140459-A2 on May 25, 2023. [Id.].

Petitioner's Central Office administrative remedy appeal relating to his CARES Act claim was filed the same day as this action, June 16, 2023, and was not exhausted until June 28, 2023, when the Central Office issued its response to remedy appeal 1146167-A2. [Id.]. Accordingly, this claim was not exhausted as of the date of the filing of the petition.

Petitioner's contention that he filed his final remedy appeal on April 16, 2023, is belied by BOP records. Petitioner originally dated his administrative remedy appeal April 16, 2023. See [Doc. 12-6]. However, BOP records reflect administrative remedy appeal 1146167-A-1 was received on April 25, 2023. See [Doc. 9-2]. But after being stamped as received on that date, it was determined on May 5, 2023, that the remedy appeal had to be rejected under policy. [Id.]. Accordingly, the submitted materials, including the remedy form stamped as received on April 25, 2023, were returned to petitioner.

Upon receiving the rejection notification and the submitted materials, it appears petitioner corrected the rejection issue and resubmitted the remedy, including resubmitting the original form, resulting in the second stamp on the form indicating a June 16, 2023,

submission date for remedy 1146167-A2. [Id.]. However, 1146167-A2, not 1146167-A1, was the remedy that was ultimately exhausted when the Central Office provided the final response on June 28, 2023. [Id.].

The delay form the original submission of remedy 1146167-A1 on April 25, 2023, through the date the final response was provided to remedy 1146167-A2 on June 28, 2023, was due to petitioner failing to resubmit the remedy with corrections between May 5, 2023, the date of rejection, and June 16, 2023, the date he ultimately resubmitted the corrected remedy appeal. [Id.]. Accordingly, petitioner did not exhaust his remedies in relation to his CARES Act claim prior to filing the instant petition.

## II. Regardless of administrative exhaustion policy, petitioner cannot receive relief pursuant to the CARES Act

As previously noted, the Cares Act, including its provisions allowing BOP greater discretion to expand Home Confinement placement, expired on May 10, 2023, over one month prior to the filing of the instant petition. Petitioner has cited no statutory or regulatory authority allowing this Court to order BOP to apply the provisions of a statute that is no longer in effect.

Even if there was a way to retroactively apply the provisions of the CARES Act, the authority and discretion to release petitioner to home confinement rests solely with BOP. See *Trowell v. Beeler*, 135 F.App'x 590, 595 (4th Cir. 2005) ("BOP must exercise its own independent judgment" in designating an appropriate facility for the service of a federal sentence under the authority of § 3621(b)). Accordingly, petitioner's request for relief under the CARES Act must be denied.

### III. Petitioner is not entitled to relief under the FSA

Petitioner concedes he has already earned 365 days of FTC that will be applied to early release, and that the additional FTCs he requests would go towards designation to a residential reentry facility or home confinement. *See* [Doc. 12]. Since the FSA has taken effect, courts have reiterated that prisoners do not have such a liberty interest, holding that the "Attorney General–and by delegation the BOP–has exclusive authority and discretion to designate the place of an inmate's confinement." ***Burg v. Nicklin***, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) (recognizing the exclusive authority and discretion over an inmate's placement in the context of the FSA); *see also* ***United States v. Egan***, 2019 WL 1552266, at *1 (S.D. N.Y. Apr. 10, 2019) ("In recognition of [BOP's] discretion, the few federal courts that have considered the recently-amended 34 U.S.C. § 60541(g) have found a district court has no power to use it to grant a prisoner early release to home detention.") (internal citations omitted).

Thus, BOP has discretion to determine if an inmate applying FTCs would be placed in prerelease custody. Because denial of prerelease custody pursuant to the application of FTCs would not affect the duration of an inmate's sentence in a constitutionally cognizable way, claims such as petitioner's may not be redressed through a federal habeas petition. *See* ***Clair v. Hendrix***, 2018 WL 6984832, at *6–7 (N.D. W.Va. Nov. 16, 2018) (Mazzone, M.J.), *report and recommendation adopted*, 2018 WL 6616607 (N.D. W.Va. Dec. 18, 2018) (Stamp, J.) (holding that a statute which "established a work-release plan under which an eligible prisoner may be released from actual custody" if certain requirement were met created a "hope about a future discretionary decision by prison

12

administrators [which was] too speculative to give an inmate a liberty interest"). As such, petitioners claims in relation to application of FTC to pre-release custody must be dismissed.

## **CONCLUSION**

Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment **[Doc. 8]** is **GRANTED**. Accordingly, the petition **[Doc. 1]** is **DENIED** and **DISMISSED**. The Clerk is instructed to strike this matter from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to provide copies of this Order to all counsel of record herein, and to mail a copy to petitioner.

DATED: August 15, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE